IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN CORNISH                    :          CIVIL ACTION
                                :
                                :
          v.                    :
                                :
                                :
CITY OF PHILADELPHIA, et al.    :          NO. 14-6920

MEMORANDUM

Bartle, J.                                 May 26, 2015

        Plaintiff John Cornish ("Cornish"), a state prisoner,
alleges that he was denied adequate medical care for a serious
eye ailment and has suffered permanent damage to his vision
while first incarcerated in correctional facilities operated by
the City of Philadelphia (the "City") and later in state prisons
operated by the Pennsylvania Department of Corrections ("DOC").
He has sued:  the City; DOC and three of its employees; several
corporations which contracted with the City and DOC to provide
medical services; five "John Doe" corporations "doing business
within the Philadelphia prison system and for correctional
facilities operated by DOC"; and a number of "John Doe"
physicians, nurses, and physician assistants employed by the
defendant corporations.  The First Amended Complaint notes that
its allegations related to DOC include DOC's three employees who
have been sued.

This action was initially filed in the Court of Common Pleas of Philadelphia County and then timely removed to this court. Plaintiff pleads liability against all defendants under: the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq.; 42 U.S.C. §§ 1983, 1985(3), and 1986; the Pennsylvania Constitution; and theories of negligence and corporate negligence.[1]

Before the court are the motions of the City and DOC to dismiss the First Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.

I.

When ruling on a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and draw all inferences in the light most favorable to the plaintiff. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008); Umland v. PLANCO Fin. Servs., Inc., 542 F.3d 59, 64 (3d Cir. 2008). We must then determine whether the pleading at issue "contain[s] sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp.

---

1. Cornish also alleges a breach of contract claim against corporate defendants Wexford Health Sources, Inc. ("Wexford"), Corizon, CCS Correctional Healthcare ("CCSCH"), and CCSCH subsidiary Correct Care Solutions, LLC ("CCS").

v. Twombly, 550 U.S. 544, 570 (2007)).  A claim must do more than raise a "'mere possibility of misconduct.'"  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Iqbal, 556 U.S. at 679).

Under this standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 578.  Instead, the complaint must contain factual matter sufficient to state a claim that is facially plausible, meaning that "the plaintiff [has] plead[ed] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).  This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.  A complaint which "pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility.'"  Id. (citing Twombly, 550 U.S. at 557).

II.

The facts set forth in the First Amended Complaint, taken in the light most favorable to plaintiff, are as follows.  Both the City and DOC, in operating their correctional facilities, contract with private healthcare corporations in order to provide medical care to inmates.  Among the corporations with which the

-3-

City and DOC contract are defendants Wexford, Corizon, and CCSCH. The healthcare corporations, in turn, employ the practitioners who administer health care services. These corporations sometimes refer prisoners to outside specialists pursuant to their contracts with the City and DOC.

Cornish alleges that this structure leads to "unnecessary delays and lack of continuity in . . . treatment" and that officials are aware of these lapses. Cornish further avers that "the medical vendors and the prison systems understand and agree that serious illness . . . is expensive to treat, and will be handled by outside providers only when the condition can no longer be ignored." He notes that the records of outside providers frequently contain notations that the City and DOC have failed to pay for necessary care. He also states that despite repeated lawsuits alleging substandard medical care within the City and Commonwealth prison systems, neither movant has taken steps to modify its practices.

Cornish has been in the custody of the City or DOC since at least 2010. From 2010 until 2013, he was housed at Curran-Fromhold Correctional Center and then at the Philadelphia Industrial Correctional Center, both of which are operated by the City. He was transferred to DOC custody in spring 2013. Since that time has been confined at the State Correctional Institution

at Camp Hill or at the State Correctional Institution at
Graterford.

At some point during his time in City custody, Cornish
began to experience problems with his eyes, particularly his left
eye.  His early symptoms included blurred vision, sensitivity to
bright light, difficulty seeing at night, and headaches, as well as
significant pain in the eye itself.  Cornish was diagnosed with
keratoconus[2] and ultimately required a type of eye surgery known as
penetrating keratoplasty.[3]  At one point he also suffered from a
hordeolum, which is a painful infection afflicting the eyelid.[4]

Throughout his time in the custody of the two moving
defendants, Cornish has repeatedly sought care for his condition.
The care he has received, according to Cornish, has been sporadic
and inadequate.  Specifically, he recounts that he experienced
significant delays when attempting to obtain necessary care from

2.  According to Cornish, keratoconus "occurs when the cornea,
the clear, dome-shaped front surface of the eye, thins and
gradually bulges outward into a cone shape . . . caus[ing]
blurred vision and . . . sensitivity to light and glare."
Cornish states that as the condition progresses, "a special
rigid gas permeable contact lens is needed."  In its advanced
stages, keratoconus "may require surgery."

3.  Cornish describes penetrating keratoplasty as "the
replacement of the host cornea with a donor cornea."

4.  Cornish states that in addition to being "painful,
erythematous, and localized," a hordeolum "may produce edema of
the entire [eye]lid.  Purulent material exudes from the eyelash
line in external hordeola, while internal hordeola suppurate on
the conjunctival surface of [the] eyelid."

outside specialists.  When he was seen by those specialists, the City and DOC frequently rendered him unable to schedule follow-up appointments, even when his doctors recommended them.  At one point, despite a warning from his doctor that "it is CRITICAL you see your ophthalmologist at Wills Eye" within a week, he was not scheduled to see the ophthalmologist for more than two months.  On another occasion, a second recommendation by Cornish's doctor that he be seen for a follow-up visit went unheeded by DOC.  During the relevant time period he was transferred several times between detention facilities, but his medical records were not transferred with him.

Cornish also experienced striking delays in access to the eye medications and contact lenses which his doctors prescribed to him.  Cornish notes that the staff at Wills Eye, the hospital at which his specialist was located, contacted DOC on several occasions about the insurance payments needed in order for the rigid contact lens to be provided.  Due to lack of proper medication, his left eye ultimately rejected the cornea which had been transplanted during the surgery.

Meanwhile, Cornish's condition has worsened significantly.  He describes persistent facial swelling, vision loss, weakness, and "burning throbbing headaches."  The vision in his right eye has deteriorated significantly as a result of that eye having to compensate for the left-eye vision loss.  Cornish

pleads that this damage to his right eye could have been avoided or mitigated had he been provided with the recommended rigid contact lens.  Cornish's left eye is now permanently damaged, and he will have to use eye drops for the rest of his life.  His right eye also remains impaired.

III.

We turn to the claims brought by Cornish against the City and DOC pursuant to the ADA in Count One of his First Amended Complaint.  Cornish pleads that he was denied the benefits of medical service while in City and DOC custody and that such denial "was by reason of his disability."  It is his position that the City and DOC denied him the benefits of medical service because his eye condition rendered it particularly expensive for them to provide him with adequate care.

DOC first seeks dismissal of the ADA claim on the ground that Cornish, as an inmate housed in a state correctional facility, has failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). In relevant part, the PLRA provides that "[n]o action shall be brought with respect to prison conditions under [§ 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

Cornish counters that failure to exhaust is an affirmative defense under the PLRA. He is correct. The Supreme Court has stated that "inmates are not required to specially plead or demonstrate exhaustion in their complaints." See Jones v. Bock, 549 U.S. 199, 216 (2007).

The City and DOC also argue that Cornish has not stated a claim under the ADA even if he does not have to plead exhaustion. In relevant part, the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12312. Our Court of Appeals has concluded that the ADA encompasses the "services, programs, or activities" of prisons. Yeskey v. Commonwealth of Pa. Dep't of Corr., 118 F.3d 168, 174 (3d Cir. 1997). Accordingly, an inmate who seeks to establish an ADA violation by the prison or correctional facility must allege that "(1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities[;] and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." Pierce v. Pitkins, 520 F. App'x 64, 67 (3d Cir. 2013); see also, e.g., D.E. v. Central Dauphin Sch. Dist., 765 F.3d 260, 269 (3d Cir. 2014).

Neither the City nor DOC appears to dispute that Cornish was at all relevant times "a qualified individual with a disability."  Rather, they argue that Cornish was not excluded from or denied the benefits of any "services, programs, or activities" within the meaning of the ADA.  They further maintain that even if such exclusion or denial did occur, it was not "by reason of" Cornish's disability.

The defendants have the better of the argument.  In Iseley v. Beard, the plaintiff, a state prisoner, alleged that he suffered from a number of physical maladies including Hepatitis-C.  200 F. App'x 137, 139 (3d Cir. 2006).  Among other things, he complained that prison authorities had denied him medical treatment in violation of the ADA.  Id.  The Court of Appeals read his complaint not as excluding him from any program based on his disability but as denying him proper medical treatment.  Id. at 142.  Citing Bryant v. Madigan, 84 F.3d 246, 248 (7th Cir. 1996), it held that such allegations, essentially claiming medical malpractice, were not encompassed by the ADA.  Id.

Bryant, the Seventh Circuit case cited favorably by the Iseley court, likewise involved a prisoner who brought suit under the ADA.  84 F.3d 246.  He alleged he was a paraplegic whose request for guardrails for his bed was refused.  Thereafter he broke his leg when a severe spasm, a condition of paraplegia, resulted in his falling out of bed.  Id. at 247.  He also

-9-

complained that he was denied pain medication after an operation to repair his leg. Id. In support of the court's decision holding that the prisoner had not stated a claim under the ADA, Judge Richard Posner wrote that the prisoner was really complaining not about exclusion from a prison service, program, or activity but about "incompetent treatment of his paraplegia." Id. at 249. The court emphasized that "[t]he ADA does not create a remedy for medical malpractice." Id.

The holdings of Iseley and Bryant are echoed by several district court decisions to which DOC draws our attention. See, e.g., Thomas v. Pa. Dep't of Corr., 615 F. Supp. 2d 411, 426 (W.D. Pa. 2009); Redding v. Hanlon, No. 06-4575, 2008 WL 762078, at *16 (D. Minn. Mar. 19, 2008); Moore v. Prison Health Servs., Inc., 24 F. Supp. 2d 1164, 1168 (D. Kan. 1998). These opinions reiterate that delays in and denials of medical care in the prison setting do not give rise to ADA violations. Regardless of the attempt at artful pleading, plaintiff here is likewise complaining about "incompetent treatment" or "medical malpractice." See id. Thus, no ADA claim is stated.

We will grant the motions of the City and DOC to dismiss Cornish's ADA claims in Count One of his First Amended Complaint.

IV.

We next address the claims under 42 U.S.C. §§ 1983, 1985(3), and 1986 pleaded in Count Two. In brief, Cornish contends

that the City and DOC maintained policies of limiting the medical

services provided to inmates with certain serious health problems

because of the expense of treating those conditions.  He states

that "the medical vendors and the prison systems understand and

agree that serious illness . . . is expensive to treat, and will be

handled by outside providers only when the condition can no longer

be ignored."  He further asserts that the City and DOC "do not

train or supervise their personnel in the appropriate manner in

regard to constitutional medical care for prisoners with vision

problems or eye disease" and that this failure to train is the

"policy and practice" of the two defendants.  To the extent that he

was denied medical care by defendants Wexford, Corizon, CCSCH, and

CCS, Cornish states that those entities "acted through and together

with" the City and DOC and "were deliberately and/or recklessly

indifferent" to his medical needs.  According to Cornish,

defendant's conduct resulted in a violation of his right to be free

from the infliction of cruel and unusual punishment under the

Eighth Amendment as well has his right to due process of law under

the Fourteenth Amendment.[5]

---

5.  When a plaintiff alleges a violation of a specific
constitutional right, we must address his claim in accordance
with the terms of that specific provision rather than conducting
a more general substantive due process analysis.  Graham v.
Connor, 490 U.S. 386, 394 (1989).  Any analysis of the merits of
Cornish's constitutional claims must focus on his allegations of

Again DOC argues that the claims of Cornish under §§ 1983, 1985(3), and 1986 must be dismissed because he has failed to exhaust his administrative remedies as required by the PLRA.  We again note that failure to exhaust is an affirmative defense and that Cornish is not required to plead administrative exhaustion in his complaint.  See Jones, 549 U.S. at 216.

We move to the argument of the City and DOC that this count must be dismissed regardless of exhaustion.  Although § 1983 does not create substantive rights, it provides a remedy for deprivations of constitutional rights or other rights established under federal law.  Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  In relevant part, § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  A plaintiff seeking relief under § 1983 must demonstrate that he or she has been subjected to such a deprivation and that the deprivation was committed by a person who acted under color of state law.  Id. (internal citations omitted).

---

an Eighth Amendment violation rather than on his averments that he was denied substantive due process.  See id.

Cornish also avers that the City and DOC are liable under 42 U.S.C. § 1985(3).  To state a claim under that provision, a complaint

> must allege that the defendants did (1)
> conspire . . . (2) for the purpose of
> depriving, either directly, or indirectly, any
> person or class or persons of the equal
> protection of the laws, or of equal privileges
> and immunities under the laws.  It must then
> assert that one or more of the conspirators
> (3) did, or caused to be done, any act in
> furtherance of the object of [the] conspiracy,
> whereby another was . . . injured in his
> person or property or . . . deprived of having
> and exercising any right or privilege of a
> citizen of the United States.

Great Am. Fed. Sav. & Loan Ass'n v. Novotny, 442 U.S. 366, 372 (1979) (quoting Griffin v. Brekenridge, 402 U.S. 88, 102-103 (1971)) (internal quotation marks omitted).  Moreover, any such conspiracy must be motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."  Griffin, 402 U.S. at 102.  Like § 1983, § 1985(3) creates no substantive rights and instead "serves only as a vehicle for vindicating federal rights and privileges which have been defined elsewhere."  Brown v. Philip Morris Inc., 250 F.3d 789, 805 (3d Cir. 2001).

Section § 1986, in turn, necessarily hinges on the existence of a § 1985 violation.  See Rogin v. Bensalem Twp., 616 F.2d 680, 696 (3d Cir. 1980).  It provides in relevant part:

> Every person who, having knowledge that any
> of the wrongs conspired to be done, and
> mentioned in section 1985 . . . , are about
> to be committed, and having power to prevent
> or aid in preventing the commission of the
> same, neglects or refuses so to do, if such
> wrongful act be committed, shall be liable
> to the party injured . . . for all damages
> caused by such wrongful act, which such
> person by reasonable diligence could have
> prevented.

Thus, in order to make out a § 1986 claim a plaintiff "must show that: (1) the defendant had actual knowledge of a § 1985 conspiracy, (2) the defendant had the power to prevent or aid in preventing the commission of a § 1985 violation, (3) the defendant neglected or refused to prevent a § 1985 conspiracy, and (4) a wrongful act was committed." Clark v. Clabaugh, 20 F.3d 1290, 1295 (3d Cir. 1994).

The Supreme Court has held that § 1983 precludes liability against states and against state officials acting in their official capacities on the ground that they are not "persons" within the meaning of that law. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). Because Pennsylvania's Department of Corrections is an agency of the Commonwealth,[6] it is not a person within the meaning of either § 1983 or § 1985 and cannot be held liable for violations of federal rights under either section.

---

6. DOC falls within the Executive Department of the Commonwealth of Pennsylvania. 71 Pa. Stat. Ann. § 61(a).

See Estate of Lagano v. Bergen Cnty. Prosecutor's Office, 769 F.3d 850, 854 (3d Cir. 2014).  As discussed above, since "transgressions of [§] 1986 by definition depend on a preexisting violation of [§] 1985," Cornish's § 1986 claim against DOC must necessarily fail as well.  See Rogin, 616 F.2d at 697.  Accordingly, we will dismiss Cornish's claims under §§ 1983, 1985(3), and 1986 insofar as they seek to establish liability against DOC.

As to the City, however, we must conduct a different analysis.  Municipalities are considered persons for purposes of §§ 1983 and 1985 and may be liable under those statutes in limited circumstances.  See Estate of Lagano, 769 F.3d at 854.  While "a city may not be held vicariously liable under § 1983 for the actions of its agents," the Supreme Court established in Monell v. Department of Social Services that a municipality can be held liable nonetheless if it maintains a policy or custom which is the "moving force" behind a constitutional violation.  436 U.S. 658, 694-95 (1978); see also Sanford v. Stiles, 456 F.3d 298, 314 (3d Cir. 2006); Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 400 (1997)).  For Monell liability to exist, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional violation."  Brown v. Pa. Dep't of Health Emergency Med. Servs. Training Inst., 318 F.3d 473, 482 (3d Cir. 2003) (citing Canton v. Harris, 489 U.S. 378, 385 (1989)).  Moreover, since municipalities are persons within the meaning of § 1985, they

-15-

also fall within the scope of that term for purposes of § 1986, which is closely linked to § 1985.

Cornish first maintains that the City and other defendants "do not train or supervise their personnel in the appropriate manner in regard to constitutional medical care for prisoners with vision problems or eye disease." To the extent that Cornish's constitutional claims are based on a theory of failure to train, they cannot survive the City's motion to dismiss. Cornish avers that "[s]uch actions are defendants' policy and practice," but beyond this conclusory statement, he pleads no facts which would plausibly show that the City maintained a policy or practice of failing to train its employees as to the constitutional standards for prisoner medical care. The facts contained in his complaint fall short of allowing us "to draw the reasonable inference that the [City] is liable" on the basis of a failure to train. See Iqbal, 556 U.S. at 578.

However, having carefully reviewed Cornish's First Amended Complaint, we conclude that he has nonetheless pleaded sufficient facts to state a Monell claim against the City under 42 U.S.C. §§ 1983, 1985(3), and 1986. Specifically, he has alleged that the City maintained a policy or custom of limiting its medical expenses for the care provided to prisoners with serious medical conditions and that this policy or custom was the moving force behind a constitutional violation. This policy or custom has

-16-

resulted in delays in and denials of adequate medical care to him and other individuals housed within the City's correctional facilities.  See Monell, 436 U.S. at 694-95.  Cornish has adequately pleaded a constitutional violation – in this case a violation of the Eighth Amendment – by making allegations which support the inference that defendants were deliberately indifferent to his serious illness.  See Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).

We will therefore grant the motion of DOC to dismiss Count Two of the First Amended Complaint and deny the motion of the City to dismiss Count Two insofar as it alleges a viable Monell claim as explained above.

V.

This brings us to Cornish's state-law negligence claim against the City and DOC.  Cornish avers in Count Three of his First Amended Complaint that his injuries were "caused by the negligence of Wexford, Corizon and CCS and CCSCH," providing specific examples of this alleged negligence.  He further states that those four corporate entities "acted through and together with the City of Philadelphia and DOC in their negligent acts." According to Cornish, "[d]efendants had a duty of care to [him]" and "[d]efendants breached that duty."  Their actions proximately caused his "injury and blindness."  While it is not totally clear from the First Amended Complaint, it appears that Count Three

-17-

contains allegations against both the City and DOC.  We note that the First Amended Complaint incorporates the activities of three defendant DOC health care employees when making allegations against DOC.

Pennsylvania's Political Subdivision Tort Claims Act, 42 Pa. Cons. Stat. Ann. § 8541 et seq., grants broad tort immunity to local agencies such as the City.  E.g., Sanford v. Stiles, 456 F.3d 298, 315 (3d Cir. 2006).  The Act provides that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee therefor or any other person."  42 Pa. Cons. Stat. Ann. § 8541.  The Act then sets forth eight exceptions to its general prohibition against liability for damages.  Id. § 8542(b).[7] Liability may be imposed against a municipality pursuant to § 8542 if an injury occurs as a result of one of the eight exceptions and if the following conditions are satisfied:

> (1) The damages would be recoverable under
> common law or a statute creating a cause of
> action if the injury were caused by a person
> not having available a defense under section

---

7.  The eight exceptions provide for liability under certain circumstances in the context of:  vehicle liability; the care, custody, or control of personal property; the care, custody, or control of real property; trees, traffic controls and street lighting under the care, custody, or control of a local agency; utility service facilities; dangerous conditions of streets; dangerous conditions of sidewalks; and the care, custody, or control of animals in the possession or control of local agencies.  42 Pa. Cons. Stat. Ann. § 8542(b).

> 8541 (relating to governmental immunity
> generally) or section 8546 (relating to
> defense of official immunity); and
>
> (2) The injury was caused by the negligent
> acts of the local agency or an employee
> thereof acting within the scope of his
> office or duties with respect to one of [the
> exceptions].  As used in this paragraph,
> "negligent acts" shall not include acts or
> conduct which constitutes a crime, actual
> fraud, actual malice or willful misconduct.

42 Pa. Cons. Stat. Ann. § 8542(a).  None of these exceptions

relates to negligence in medical care of the type alleged by

Cornish.  See id.  Because Cornish's negligence claim against the

City falls within the prohibition of § 8541, and because his claim

is not encompassed by any of § 8542's exceptions to that

prohibition, we will dismiss Count Three of the First Amended

Complaint insofar as it applies to the City.

The Commonwealth, for its part, enjoys broad sovereign

immunity.  This immunity is twofold.  See Lombardo v. Pa. Dep't of

Pub. Welfare, 540 F.3d 190, 193 (3d Cir. 2008).  First, the

Commonwealth is generally immune from suit in federal court as a

result of the Eleventh Amendment to the United States

Constitution[8], but this immunity can be waived.  Id. at 193-94,

---

8.  The Eleventh Amendment provides that "[t]he Judicial power of
the United States shall not be construed to extend to any suit in
law or equity, commenced or prosecuted against one of the United
States by Citizens of another State or by Citizens or Subjects of
any Foreign State."  U.S. Const. amend. XI.  Beyond the plain
meaning of its text, the Eleventh Amendment has also been construed

197.  This matter was removed by the City from the Court of Common

Pleas to federal court without objection by DOC.  DOC concedes in

its brief that "the removal of litigation from state to federal

court invokes the jurisdiction of the federal court, thereby

waiving the Commonwealth's Eleventh Amendment subject matter

jurisdictional immunity from suit in a federal forum."

Second, the Commonwealth and its agencies still enjoy the

benefit of sovereign immunity under Pennsylvania law.  Id. at 195;

42 Pa. Cons. Stat. Ann. § 8521.  The General Assembly has created

only nine permissible types of claims for damages.  42 Pa. Cons.

Stat. Ann. § 8522(b).[9]  Among those enumerated exceptions, Cornish

relies on the one that allows for a lawsuit for "[a]cts of health

care employees of Commonwealth agency medical facilities or

institutions or by a Commonwealth party who is a doctor, dentist,

---

to bar federal lawsuits by citizens against their own states and
their states' agencies except in limited circumstances.  Idaho v.
Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 267-68 (1998); Hans v.
Louisiana, 134 U.S. 1 (1890).

9.  Specifically, § 8522 provides that liability may be imposed
"for damages arising out of a negligent act where the damages
would be recoverable under the common law or a statute creating
a cause of action if the injury were caused by a person not
having available the defense of sovereign immunity" and if the
damages at issue were caused by one of the following:
"[v]ehicle liability"; "[m]edical-professional liability";
"[c]are, custody, or control of personal property";
"Commonwealth real estate, highways and sidewalks"; "[p]otholes
and other dangerous conditions"; "[c]are, custody or control of
animals"; "[l]iquor store sales"; "National Guard activities";
and "[t]oxoids and vaccines."  42 Pa. Cons. Stat. Ann. § 8522.

nurse or related health care personnel."  Id. § 8522(b)(2).  The
allegations related to DOC fall within the scope of § 8522(b)(2),
and as a result DOC, as a Commonwealth agency, is not immune from
monetary liability for any such wrongs since the acts of certain of
its health care workers are involved.

Accordingly, we will grant the motion of the City insofar
as it applies to the negligence claim contained in Count Three of
Cornish's First Amended Complaint, but we will deny the motion of
DOC insofar as it applies to that claim.

VI.

There remain the state constitutional claims against the
City and DOC contained in Count Five.  Cornish alleges that the
conduct of defendants violated his rights under Article I, §§ 1 and
13 of the Constitution of the Commonwealth of Pennsylvania.
Section 1 of Article I is entitled "Inherent Rights of Mankind"
and states:  "All men are born equally free and independent, and
have certain inherent and indefeasible rights, among which are
those of enjoying and defending life and liberty, of acquiring,
possessing and protecting property and reputation, and of
pursuing their own happiness."  Section 13 of the same Article,
entitled "Bail, Fines and Punishments," states:  "Excessive bail
shall not be required, nor excessive fines imposed, nor cruel
punishments inflicted."

Cornish seeks damages as well as equitable relief in the form of a prohibition against defendants' continuation of their "illegal policy, practice, or custom" and an order requiring them "to promulgate an effective policy against such practices and to adhere thereto."

The sovereign immunity of the Commonwealth and its agencies, which we discuss above, extends to monetary claims based upon the Pennsylvania Constitution. See 42 Pa. Cons. Stat. Ann. § 8521; Fitzpatrick v. Pa. Dep't of Transp., 40 F. Supp. 2d 631, 636 (E.D. Pa. 1999). Moreover, the Commonwealth has not waived this immunity with respect to "equitable claims seeking affirmative action by way of injunctive relief." Collins v. Pennsylvania, No. 96 M.D. 2013, 2013 WL 5874770, at *3 (Pa. Commw. Ct. Oct. 31, 2013).

Cornish argues that his claims for damages brought under the Pennsylvania Constitution fall within the Commonwealth's waiver of sovereign immunity. See 42 Pa. Cons. Stat. Ann. § 8522. In doing so, Cornish points to the exception for "[a]cts of health care employees of Commonwealth agency medical facilities or institutions or by a Commonwealth party who is a doctor, dentist, nurse or related health care personnel." See id. § 8522(b)(2). Cornish fails to note, however, that § 8522's waiver applies only to enumerated claims "for damages arising out of a negligent act where the damages would be recoverable under the common law or a

statute creating a cause of action <u>if the injury were caused by a person not having available the defense of sovereign immunity</u>." <u>Id.</u> § 8522(a) (emphasis added).  Cornish's claims under Article I, §§ 1 and 13 of the Pennsylvania Constitution would not entitle him to damages.  He has pointed to no existing cause of action under the common law or statute against a private party for constitutional injuries, that is, against a party "not having available the defense of sovereign immunity."  <u>See id.</u>  Accordingly, DOC as a Commonwealth agency is entitled to sovereign immunity from Cornish's state constitutional claims for both equitable relief and damages.

The City for its part is protected from certain suits for damages by Pennsylvania's Political Subdivision Tort Claims Act.  <u>See</u> 42 Pa. Cons. Stat. Ann. § 8541.  That statute contains no exception for state constitutional claims like those pleaded by Cornish.  <u>See</u> <u>id.</u> § 8542.  Moreover, our Court of Appeals has held that § 8541 grants immunity to municipalities from claims for monetary damages arising under the Pennsylvania Constitution which do not fall within any of § 8542's enumerated exceptions.  <u>Sameric Corp. of Del., Inc. v. City of Phila.</u>, 142 F.3d 582, 600 (3d Cir.

1998).[10]  Accordingly, § 8541 immunizes the City from monetary liability for Cornish's constitutional claims.

Moreover, Cornish's claim for monetary damages against the City under the Pennsylvania Constitution necessarily fails because "[n]o Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution." Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist., 442 F. App'x 681, 687 (3d Cir. 2011) (citing Jones v. City of Phila., 890 A.2d 1188, 1208 (Pa. Commw. Ct. 2006)); see also Collura v. City of Phila., 590 F. App'x 180, 186 (3d Cir. 2014) (quoting Jones, 890 A.2d at 1208).

As noted above, Cornish also seeks equitable relief against the City pursuant to the Pennsylvania Constitution.  The immunity provided to the City by § 8541 "extends only to liability for *damages*," and not to claims for injunctive relief.  E-Z Parks, Inc. v. Larson, 498 A.2d 1364, 1369-70 (Pa. Commw. Ct. 1985), aff'd, 503 A.2d 931 (Pa. 1986) (per curiam) (emphasis in original). We need not reach the issue whether equitable relief under such

---

10.  We note that even in light of the Sameric decision, some decisions in this district have concluded that § 8541 does not immunize Pennsylvania municipalities from liability for monetary damages under the Pennsylvania Constitution.  See, e.g., Montanye v. Wissahickon Sch. Dist., 327 F. Supp. 2d 510, 525 (E.D. Pa. 2004); Grimm v. Borough of Norristown, 226 F. Supp. 2d 606, 656 (E.D. Pa. 2002); Berry v. Cnty. of Bucks, No. 01-CV-3101, 2002 WL 373338, at *3 (E.D. Pa. Mar. 11, 2002).  Sameric, a decision of our Court of Appeals, controls our analysis.

circumstances is available, since the issue is moot.  As of the time Cornish filed his First Amended Complaint he had been transferred from the custody of the City to the custody of DOC.

We will therefore dismiss in their entirety the state constitutional claims of Cornish against both DOC and the City which are pleaded in Count Five of his First Amended Complaint.