```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

```
JOHN CORNISH                    :       CIVIL ACTION
                                :
                                :
         v.                     :
                                :
                                :
CITY OF PHILADELPHIA, et al.    :       NO. 14-6920
```

MEMORANDUM

Bartle, J.                                    June 30, 2015

Plaintiff John Cornish ("Cornish"), a state prisoner, seeks damages for violations of: the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq.; and 42 U.S.C. §§ 1983, 1985, and 1986. His first amended complaint also pleads state law negligence and state law constitutional claims. The gravamen of the action concerns the allegedly inadequate eye care he has received while incarcerated which has left him seriously visually impaired.

Defendants Christopher Oppman ("Oppman"), the Director of Health Services at the Pennsylvania Department of Corrections ("DOC"), and Joseph Korszniak ("Korszniak"), a Corrections Health Care Administrator for the State Correctional Institution at Graterford, have moved to dismiss the federal claims for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure and to dismiss the state-law claims for lack of subject matter jurisdiction under Rule 12(b)(1). They

have also moved to dismiss the crossclaims of defendants Prison Health Services, Inc. and Corizon under Rules 12(b)(1) and 12(b)(6). Cornish has filed a response to the instant motion but Prison Health Services, Inc. and Corizon have not.

Cornish concedes that we should dismiss his claim against Oppman and Korszniak under the ADA as well as his claims against them under 42 U.S.C. §§ 1983, 1985, and 1986 to the extent that the two are sued in their official capacities. Nor is the motion to dismiss the crossclaims opposed. We therefore grant the motion of Oppman and Korszniak to this extent. This leaves Cornish's claims under §§ 1983, 1985, and 1986 for damages against Oppman and Korszniak in their individual capacities as well as his supplemental state common law and constitutional claims.

I.

When deciding a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and draw all inferences in the light most favorable to the plaintiff. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008); Umland v. PLANCO Fin. Servs., Inc., 542 F.3d 59, 64 (3d Cir. 2008). We must then determine whether the pleading at issue "contain[s] sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly,

550 U.S. 544, 570 (2007)). A claim must do more than raise a "'mere possibility of misconduct.'" Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Iqbal, 556 U.S. at 679).

Under this standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 578. Instead, the complaint must contain factual matter sufficient to state a claim that is facially plausible, meaning that "the plaintiff [has] plead[ed] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. A complaint which "pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility.'" Id. (citing Twombly, 550 U.S. at 557).

Defendants, as noted above, seek to dismiss the state law claims for lack of subject-matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. When considering, as we do here, a facial attack on the complaint for lack of subject-matter jurisdiction, "the trial court must accept the complaint's allegations as true." Turicentro, S.A. v. Am. Airlines Inc., 303 F.3d 293, 300 n.4 (3d Cir. 2002) (citing NE Hub

Partners, L.P. v. CNG Transmission Corp., 239 F.3d 333, 341 & n.7 (3d Cir. 2001)). As in a Rule 12(b)(6) setting, the court should draw all reasonable inferences in the plaintiff's favor. NE Hub Partners, 239 F.3d at 341.

II.

The facts set forth in the first amended complaint, taken in the light most favorable to Cornish, are as follows. The moving defendants, Oppman and Korszniak, are both DOC officials. Oppman serves as DOC's Director of Health Services, while Korszniak is the Corrections Health Care Administrator for the State Correctional Institution at Graterford ("SCI Graterford"). DOC, in operating its correctional facilities, contracts with private healthcare corporations in order to provide medical care to inmates.[1] The healthcare corporations, in turn, employ the practitioners who administer health care services. These corporations sometimes refer prisoners to outside specialists pursuant to their contracts with DOC.

Cornish avers that "the medical vendors and the prison systems understand and agree that serious illness . . . is expensive to treat, and will be handled by outside providers only when the condition can no longer be ignored." He notes that the

---

1. Among the corporations with which DOC contracts are the following defendants: Wexford Health Sources, Inc.; Corizon; Correct Care Solutions, LLC; and CCS Correctional Healthcare.

records of outside providers frequently contain notations that the DOC has failed to pay for necessary care.  He also states that despite repeated lawsuits alleging substandard medical care within the Commonwealth prison system, the DOC has not taken steps to modify its practices.

Cornish has been housed in DOC facilities since spring 2013, when he was transferred to the custody of the Commonwealth from the custody of the City of Philadelphia.  Since that time he has been confined at the State Correctional Institution at Camp Hill ("SCI Camp Hill") or at SCI Graterford.

At some point during his time in City custody, Cornish began to experience problems with his eyes, particularly his left eye.  His early symptoms included blurred vision, sensitivity to bright light, difficulty seeing at night, and headaches, as well as significant pain in the eye itself.  Cornish was diagnosed with keratoconus[2] and ultimately required a type of eye surgery known as

---

2.  According to Cornish, keratoconus "occurs when the cornea, the clear, dome-shaped front surface of the eye, thins and gradually bulges outward into a cone shape . . . caus[ing] blurred vision and . . . sensitivity to light and glare."  Cornish states that as the condition progresses, "a special rigid gas permeable contact lens is needed."  In its advanced stages, keratoconus "may require surgery."

penetrating keratoplasty.³ At one point he also suffered from a hordeolum, which is a painful infection afflicting the eyelid.⁴

While in City custody and after being transferred to the custody of DOC, Cornish has repeatedly sought care for his condition. The care he has received, according to Cornish, has been sporadic and inadequate. Specifically, he recounts that he experienced significant delays when attempting to obtain necessary care from outside specialists. When he was seen by those specialists, DOC frequently rendered him unable to schedule follow-up appointments, even when his doctors recommended them. At one point while Cornish was housed at SCI Camp Hill, his doctor warned that "it is CRITICAL you see your ophthalmologist at Wills Eye" within a week. Nonetheless, he was not scheduled to see the ophthalmologist for more than two months. On another occasion, while Cornish was housed at SCI Graterford, his doctor recommended during an appointment that Cornish be scheduled for a follow-up visit within four to six weeks. No such visit was scheduled, and Cornish was instead moved back to SCI Camp Hill. During the relevant time period he was transferred several times

---

3. Cornish describes penetrating keratoplasty as "the replacement of the host cornea with a donor cornea."

4. Cornish states that in addition to being "painful, erythematous, and localized," a hordeolum "may produce edema of the entire [eye]lid. Purulent material exudes from the eyelash line in external hordeola, while internal hordeola suppurate on the conjunctival surface of [the] eyelid."

between detention facilities, but his medical records were not transferred with him.

Cornish also experienced striking delays in access to the eye medications and contact lenses which his doctors prescribed to him. Cornish notes that the staff at Wills Eye, the hospital at which his specialist was located, contacted SCI Graterford "multiple times" about the insurance payments needed in order for the rigid contact lens to be provided. Due to lack of proper medication, his left eye ultimately rejected the cornea which had been transplanted during the surgery. Cornish pleads specifically that "[w]hile at SCI Graterford he was not properly medicated for his eye problem which ultimately triggered a rejection of the transplant."

Meanwhile, Cornish's condition has worsened significantly. He describes persistent facial swelling, vision loss, weakness, and "burning throbbing headaches." The vision in his right eye has deteriorated markedly as a result of that eye having to compensate for the left-eye vision loss. Cornish pleads that this damage to his right eye could have been avoided or mitigated had he been provided with the recommended rigid contact lens. Cornish's left eye is now permanently damaged, and he will have to use eye drops for the rest of his life. His right eye also remains impaired.

III.

Cornish, as noted above, asserts claims for damages against defendants Oppman and Korszniak in their individual capacities under 42 U.S.C. §§ 1983, 1985, and 1986. Oppman and Korszniak move to dismiss under Rule 12(b)(6) on the ground that Cornish has not stated a claim upon which relief can be granted.

Although § 1983 does not create substantive rights, it provides a remedy for deprivations of constitutional rights or other rights established under federal law. Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). In relevant part, § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. A plaintiff seeking relief under § 1983 must demonstrate that he or she has been subjected to such a deprivation and that the deprivation was committed by a person who acted under color of state law. Kneipp, 95 F.3d at 1204.

State officials sued in their individual capacities for damages are considered to be persons under §§ 1983. Hafer v. Melo, 502 U.S. 21, 31 (1991); Will v. Mich. Dep't of State

Police, 491 U.S. 58, 71 (1989). Generally, in order to plead liability against such an official under § 1983, a plaintiff must adequately allege that the official was personally involved in the constitutional violation at issue. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Respondeat superior liability "will not attach under § 1983." City of Canton v. Harris, 489 U.S. 378, 385 (1989). However, state actors are liable under § 1983 for the unconstitutional acts of their subordinates in two discrete contexts. First, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or as the person in charge, had knowledge of and acquiesced" in the violations. Rode, 845 F.2d at 1207 (citing A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004)). Second, a supervisor-defendant may be held liable "if it is shown that such defendant[], 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" Id. (citing A.M. ex rel. J.M.K., 372 F.3d at 586).

Defendants do not appear to dispute that they acted under color of state law at all relevant times. Rather, they maintain that this conduct did not give rise to a constitutional deprivation. See Kneipp, 95 F.3d at 1204. We disagree. It is

well established that "deliberate indifference to serious medical needs of prisoners" amounts to cruel and unusual punishment in violation of the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). If "unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the [E]ighth [A]mendment." Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (internal citations and quotation marks omitted). Cornish has plausibly alleged that he experienced a serious medical need in that he suffered from pain and damage to his eyesight as a result of the limitations placed on his medical care. See id. Further, he plausibly claims that defendants were deliberately indifferent to his need for treatment. Therefore, Cornish has sufficiently averred the predicate constitutional deprivation for § 1983 purposes. See Kneipp, 95 F.3d at 1204.

  Oppman and Korszniak further urge that Cornish has not stated a claim against them under § 1983 because he has failed adequately to allege their personal involvement in the constitutional deprivation. This argument is without merit. Cornish states in his first amended complaint that individual actions ascribed to the DOC in his pleading are attributable to Oppman and Korszniak, noting that those two persons "are

referred to . . . together with DOC where individual actions are performed." Further, he plausibly alleges that the two "knew about and acquiesced in" the failure of the medical providers to deliver adequate treatment for Cornish's condition. See Iqbal, 556 U.S. at 678. That Oppman and Korszniak, as persons in supervisory roles, "had knowledge of and acquiesced" in constitutional violations is sufficient to state a claim for liability against them under § 1983. Rode, 845 F.2d at 1207. We find it plausible that the Director of Health Services for the DOC and the Corrections Health Care Administrator for the facility in which Cornish was held would have knowledge of, and at least some control over, the provision of significant and costly medical treatment to an inmate in DOC custody.

Even assuming without deciding that Cornish has not plausibly alleged the knowledge and acquiescence of Oppman and Korszniak in his deficient medical care, he has still made out a claim for liability against them under § 1983. This is so because his first amended complaint avers that the two defendants, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused" the alleged Eighth Amendment violation. See Rode, 845 F.2d at 1207 (internal citations omitted). Specifically, Cornish pleads that each of the moving defendants, together with the DOC, established and maintained a policy or custom which involved limiting the DOC's

medical expenses for the care provided to inmates who had serious medical conditions. Defendants, Cornish states, concluded that serious illness "is expensive to treat," and accordingly determined that it would be "handled by outside providers only when the condition c[ould] no longer be ignored." It was this policy, according to Cornish, that prompted defendants significantly to restrict his care in violation of his Eighth Amendment rights. What is more, Cornish has plausibly alleged that defendants were deliberately indifferent to the consequences of these actions. Accordingly, Cornish has adequately alleged the involvement of Oppman and Korszniak in a policy or custom which caused a constitutional deprivation to the extent necessary for § 1983 liability. See id.

Cornish also avers that the defendants are liable under 42 U.S.C. § 1985(3). To state a claim under that provision, a complaint

> must allege that the defendants did (1) conspire . . . (2) for the purpose of depriving, either directly, or indirectly, any person or class or persons of the equal protection of the laws, or of equal privileges and immunities under the laws. It must then assert that one or more of the conspirators (3) did, or caused to be done, any act in furtherance of the object of [the] conspiracy, whereby another was . . . injured in his person or property or . . . deprived of having and exercising any right or privilege of a citizen of the United States.

Great Am. Fed. Sav. & Loan Ass'n v. Novotny, 442 U.S. 366, 372 (1979) (quoting Griffin v. Brekenridge, 402 U.S. 88, 102-103 (1971)) (internal quotation marks omitted). Like § 1983, § 1985(3) creates no substantive rights and instead "serves only as a vehicle for vindicating federal rights and privileges which have been defined elsewhere." Brown v. Philip Morris Inc., 250 F.3d 789, 805 (3d Cir. 2001). A conspiracy under § 1985(3) must be motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Griffin, 402 U.S. at 102. Our Court of Appeals has held that animus toward women allows for a claim under § 1985(3). Novotny v. Great Am. Fed. Sav. & Loan Ass'n, 584 F.2d 1235, 1243 (3d Cir. 1978), vacated on other grounds, 442 U.S. 366, 378 (1979). More recently, that court has ruled that a conspiracy motivated by animus towards individuals who are mentally retarded is sufficiently "class-based" to fall within the scope of § 1985(3), provided that the other elements of a claim under that provision are satisfied. Lake v. Arnold, 112 F.3d 682, 687 (3d Cir. 1997). It reasoned that there has traditionally been discrimination against this class of persons. Id. The court was careful, however, to limit its holding and refrained from deciding more broadly whether all handicapped persons constitute a § 1985(3) class. See id. at 686 n.5. We conclude that persons with serious illness or medical problems such as Cornish are not a group or class against whom there historically

-13-

has been invidious discriminatory animus. Thus, Cornish has not stated a claim under § 1985(3).

Section § 1986, under which Cornish also pleads liability against Oppman and Korszniak, necessarily hinges on the existence of a § 1985 violation. See Rogin v. Bensalem Twp., 616 F.2d 680, 696 (3d Cir. 1980). It provides in relevant part:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 . . . , are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured . . . for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented.

Thus, in order to make out a § 1986 claim a plaintiff "must show that: (1) the defendant had actual knowledge of a § 1985 conspiracy, (2) the defendant had the power to prevent or aid in preventing the commission of a § 1985 violation, (3) the defendant neglected or refused to prevent a § 1985 conspiracy, and (4) a wrongful act was committed." Clark v. Clabaugh, 20 F.3d 1290, 1295 (3d Cir. 1994). Since no viable § 1985 claim exists here, Cornish cannot state a claim under § 1986. See Rogin, 616 F.2d at 696.[5]

---

5. We are mindful that we allowed Cornish's §§ 1985(3) and 1986 claims to proceed against the City of Philadelphia. See Order dated May 26, 2015 (doc. # 49). We did so in large part because the City of Philadelphia, in support of its request that we dismiss those claims, merely made a cursory statement that

In sum, Cornish has pleaded facts sufficient to allege the existence of an Eighth Amendment violation, and has adequately averred that Oppman and Korszniak are liable under 42 U.S.C. §§ 1983 in connection with this deprivation. However, he has failed adequately to allege that they are liable under §§ 1985(3) and 1986. Accordingly, to the extent that the first amended complaint pleads liability against Oppman and Korszniak in their individual capacities, we will grant their motion to dismiss it insofar as it seeks to establish liability under §§ 1985(3) and 1986. We will deny their motion to dismiss Cornish's claims under § 1983.

IV.

We now address Cornish's state common law and state constitutional claims for damages and injunctive relief against defendants Oppman and Korszniak. Cornish pleads that defendants are liable for negligence under Pennsylvania law. Cornish also pleads that defendants violated his rights under Sections 1 and 13 of Article I of the Pennsylvania Constitution.[6]

---

Cornish had "not set forth any specific policies that are in violation of the civil rights statutes, including no facts to support the conspiracy claims in 42 U.S.C. §1985(3), and 42 U.S.C. §1986." It provided no analysis or citation of authority. In contrast, Oppman and Korszniak have persuasively argued that the §§ 1985(3) and 1986 claims against them should be dismissed and have drawn our attention to precedents in support of their position.

6. Section 1 of Article I is entitled "Inherent Rights of Mankind" and states: "All men are born equally free and

These defendants assert that this court lacks subject matter jurisdiction under Rule 12(b)(1) to the extent that Cornish has asserted these state law clams against them. They contend that state officials under these circumstances are immune from suit for damages by a private party in federal court under the Eleventh Amendment to the Constitution. That amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

The Supreme Court has construed this amendment also to apply when a citizen sues his or her own state or official or an agency of that state. E.g., Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 267 (1997) (citing Hans v. Louisiana, 134 U.S. 1 (1890)).

A state or state official may waive that immunity and agree to allow the suit to go forward in a federal forum. Lombardi v. Pa. Dep't of Pub. Welfare, 540 F.3d 190, 193-94 (3d Cir. 2008). Defendant DOC, a state agency, did just that when

---

independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." Section 13 of the same Article, entitled "Bail, Fines and Punishments," states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel punishments inflicted."

the action was removed from the state court. However, at that time Oppman and Korszniak were not parties and were named defendants only when Cornish filed a first amended complaint. Unlike the Department of Corrections, they have not waived their immunity under the Eleventh Amendment. See 42 Pa. Cons. Stat. Ann. § 8521(b).

Congress may abrogate the Eleventh Amendment immunity of a state or state official to the extent allowed under § 5 of the Fourteenth Amendment. Section 5 authorizes Congress to enforce the substantive guarantees of life, liberty, and property and equal protection of the laws as set forth in § 1 of the Fourteenth Amendment. U.S. Const. amend. XIV, § 5; see also, e.g., Bd. of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356, 365 (2001). However, Cornish's state law claims against Oppman and Korszniak do not involve the substantive provisions of the Fourteenth Amendment, and Congress has not attempted to act here under § 5. See Bd. of Trustees of Univ. of Alabama, 531 U.S. at 365.

Finally, this court's supplemental jurisdiction under 28 U.S.C. § 1367 does not override the immunity granted under

the Eleventh Amendment.  See Pennhurst State Sch. & Hosp. v. Holderman, 465 U.S. 89, 121 (1984).[7]

Accordingly, defendants Oppman and Korszniak cannot be sued in this forum with respect to Cornish's state law claims, and those claims will be dismissed for lack of subject matter jurisdiction.  See Laskaris v. Thornburgh, 601 F.2d 23, 25 (3d Cir. 1981).

---

7.  We note that notwithstanding the Eleventh Amendment a plaintiff may seek injunctive relief in the federal court under certain circumstances against a state official when federal law is implicated.  See Ex Parte Young, 201 U.S. 123, 155-56 (1908). This issue is not relevant here.