IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN CORNISH                 :            CIVIL ACTION
                              :
                              :
         v.                :
                              :
                              :
CITY OF PHILADELPHIA, et al.   :       NO. 14-6920

MEMORANDUM

Bartle, J.                                      January 19, 2016

       Plaintiff John Cornish ("Cornish"), a state prisoner, has filed suit against the City of Philadelphia (the "City"), the Pennsylvania Department of Corrections ("DOC"), certain DOC officials, four corporate health care entities which contract with the City and DOC,[1] two physicians, an optometrist, a physician assistant, a registered nurse, and several "John Doe" corporations and health care professionals.

       Cornish, in his second amended complaint, pleads: violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq.; violations of 42 U.S.C. §§ 1983, 1985, and 1986; state-law negligence and state-law constitutional claims; a state-law breach-of-contract claim against the corporate entities; and state-law professional

---

1. The named corporate entities are:  Wexford Health Sources, Inc. ("Wexford"); CCS Correctional Healthcare ("CCS") and its subsidiary, Correct Care Solutions, LLC ("Correct Care Solutions"); and Corizon, which is also listed as a defendant under its former name, Prison Health Services, Inc.

negligence claims against the two named physicians.  The gravamen of his action concerns the allegedly inadequate eye care he has received while incarcerated.  He asserts that he is now seriously visually impaired as a result.

Now before the court are motions to dismiss the second amended complaint filed by:  DOC; two of its health care officials, Christopher Oppman ("Oppman") and Joseph Korszniak ("Korszniak")[2]; Wexford; Correct Care Solutions; Jose Boggio, M.D. ("Boggio") and Haresh Pandya, M.D. ("Pandya"), both of whom are alleged to be physicians employed at relevant times by Wexford and CCS; and Raymond Machak, P.A. ("Machak").[3]  All movants seek dismissal for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

DOC also seeks dismissal of the remaining state-law claims against it for failure to prosecute under Rule 41(b) of the Federal Rules of Civil Procedure.  Meanwhile, Oppman and Korszniak request that we dismiss the state-law claims against

---

2.  Oppman serves as DOC's Director of Health Services, while Korszniak is the Corrections Health Care Administrator for the State Correctional Institution at Graterford ("SCI Graterford").

3.  The second amended complaint identifies Machak as a DOC employee.  However, during a telephone conference with counsel held on January 7, 2016, the court was advised that at all relevant times Machak actually worked for Correct Care Solutions and has never worked for DOC.  This was reiterated in an affidavit signed by the Director of Insurance and Litigation for Correct Care Solutions and submitted to the court on January 14, 2016.

them for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

Cornish has also filed a motion for an extension of time to file any certifications required pursuant to Rule 1042.3 of the Pennsylvania Rules of Civil Procedure.

Finally, Oppman and Korszniak have moved to dismiss the crossclaim pleaded against them by defendants Prison Health Services, Inc., Corizon, and Margaret McGrogan, R.N ("McGrogan"). No opposition to their motion has been filed.

## I.

In orders dated May 26, 2015, June 30, 2015, and August 18, 2015, we dismissed a number of the claims made by Cornish in his first amended complaint as to certain defendants.[4]

---

4. Specifically, we dismissed Cornish's ADA claims against the City, DOC, Oppman, and Korszniak under Rule 12(b)(6). See Orders dated May 26, 2015 and June 30, 2015 (Docs. ## 49, 64). We also dismissed Cornish's §§ 1983, 1985(3), and 1986 claims insofar as they alleged liability against DOC, against Oppman and Korszniak in their official capacities, and against the City for vicarious liability and failure to train, all pursuant to Rule 12(b)(6). See id. Cornish's §§ 1985(3) and 1986 claims were dismissed against Oppman and Korszniak in their individual capacities pursuant to Rule 12(b)(6). See Order dated June 30, 2015 (Doc. # 64). Finally, we dismissed Cornish's state law negligence claims against Oppman, Korszniak, and the City and his state constitutional claims against Oppman, Korszniak, the City, and DOC, all for lack of subject-matter jurisdiction under Rule 12(b)(1). See Orders dated May 26, 2015 and June 30, 2015 (Docs. ## 49, 64). Thereafter, in an order dated August 18, 2015, we entered judgment on the pleadings in favor of DOC on Cornish's claims of institutional negligence against it, again

With leave of the court, Cornish subsequently filed a second amended complaint.  He added as defendants Boggio, Pandya, and Machak, who had previously been named as "John Doe" defendants, as well as James J. Weyand, O.D. and McGrogan.  He has also alleged for the first time in his second amended complaint claims of professional negligence against Boggio and Pandya.

II.

When deciding a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and draw all inferences in the light most favorable to the plaintiff.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008); Umland v. PLANCO Fin. Servs., Inc., 542 F.3d 59, 64 (3d Cir. 2008).  We must then determine whether the pleading at issue "contain[s] sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim must do more than raise a "'mere possibility of misconduct.'"  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Iqbal, 556 U.S. at 679).

---

under Rule 12(b)(1).  See Order dated August 18, 2015 (Doc. # 75).

Under this standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 578.  Instead, the complaint must contain factual matter sufficient to state a claim that is facially plausible, meaning that "the plaintiff [has] plead[ed] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.  A complaint which "pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility.'" Id. (citing Twombly, 550 U.S. at 557).

As noted above, Oppman and Korszniak seek to dismiss the state-law claims against them for lack of subject-matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure.  When considering, as we do here, a facial attack on a complaint for lack of subject-matter jurisdiction, "the trial court must accept the complaint's allegations as true." Turicentro, S.A. v. Am. Airlines Inc., 303 F.3d 293, 300 n.4 (3d Cir. 2002) (citing NE Hub Partners, L.P. v. CNG Transmission Corp., 239 F.3d 333, 341 & n.7 (3d Cir. 2001)).  As in a Rule 12(b)(6) setting, the court

-5-

should draw all reasonable inferences in the plaintiff's favor. NE Hub Partners, 239 F.3d at 341.

In addition, DOC seeks dismissal of the remaining state-law claims against it for failure to prosecute under Rule 41(b) of the Federal Rules of Civil Procedure.  As DOC observes, Rule 41(b) permits dismissal of claims against a particular defendant if the plaintiff fails to prosecute the action or to comply with a court order or with the Federal Rules of Civil Procedure.

III.

Cornish's second amended complaint restates, without substantial alteration, a number of claims that we previously dismissed as to DOC, Oppman, and Korszniak when they were pleaded in the first amended complaint.  See Order dated August 18, 2015 (Doc. # 75); Order dated June 30, 2015 (Doc. # 64); Order dated May 26, 2015 (Doc. # 49).  DOC, Oppman, and Korszniak ask us to dismiss those claims once again.  They urge us to do so pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and on the ground that the previously-dismissed claims have not been substantially altered in the second amended complaint.  In response, Cornish simply concedes that if the movants had asked him "to stipulate that the Court's Memorandums and Orders dated May 26, 2015, June 30, 2015, and August 18, 2015 applied to the Second Amended

-6-

Complaint as to these defendants, [Cornish] would have agreed to do so."

We will therefore dismiss the following claims in the second amended complaint:  Count I insofar as it alleges liability against DOC, Oppman, and Korszniak; Count II insofar as it alleges liability under § 1983 against DOC, insofar as it alleges liability under § 1983 against Oppman and Korszniak in their official (but not their individual) capacities, and insofar as it alleges liability under §§ 1985(3) and 1986 against all three parties; Count III insofar as it alleges liability against Oppman and Korszniak, and insofar as it alleges liability against DOC based on a theory of institutional negligence; and Count V insofar as it alleges liability against DOC, Oppman, and Korszniak.

IV.

Boggio, Pandya, and Machak, who were not named as defendants in the first amended complaint, seek dismissal of Count I under Rule 12(b)(6) to the extend that it alleges liability against them.  As noted above, Count I contains Cornish's ADA claim.  Boggio, Pandya, and Machak argue that the ADA establishes liability only against "public entities" and not against persons in their individual capacities.  We have already dismissed the ADA claim against other similarly situated defendants on the ground that denial of proper medical treatment

-7-

in a prison cannot give rise to an ADA violation.  See
Memorandum and Order dated May 26, 2015 (Docs. ## 48, 49); see
also Iseley v. Beard, 200 F. App'x 137, 139 (3d Cir. 2006);
Bryant v. Madigan, 84 F.3d 246, 248 (7th Cir. 1996).  Cornish
has conceded that our rulings as to the first amended complaint
are also applicable to the second amended complaint.  We will
therefore grant the motion of Boggio, Pandya, and Machak to
dismiss Count I to the extent that it pleads liability against
them.

V.

Boggio, Pandya, Machak, Wexford, and Correct Care
Solutions also ask the court to dismiss under Rule 12(b)(6)
Count II insofar as it pleads liability against them pursuant to
§§ 1985(3) and 1986.[5]  Cornish appears to concede that these
claims must be dismissed, as he acknowledges that the court "has
already ruled on these claims" and that the second amended
complaint does not "add[] any new facts to these two claims."
Accordingly, we will grant the motion of Boggio, Pandya, Machak,
Wexford, and Correct Care Solutions in this regard.

VI.

We next address Count III of the second amended
complaint which alleges "negligence/corporate negligence."  As

---

5.  These defendants do not address any claims pleaded against
them in Count II pursuant to § 1983.

noted above, Count III is being dismissed to the extent that it alleges liability against Oppman and Korszniak and to the extent that it alleges liability against DOC based on a theory of institutional negligence.

DOC, Wexford, and Correct Care Solutions argue that the claims against them in Count III must be dismissed because Cornish has failed timely to file the proper certificates of merit required by Rule 1042.3 of the Pennsylvania Rules of Civil Procedure.[6]  Machak asserts that to the extent that plaintiff is asserting a professional negligence claim against him, that claim must be dismissed for the same reason.

The certificate of merit requirement set forth in Rule 1042.3 of the Pennsylvania Rules of Civil Procedure was adopted in response to concerns "over the greater number of malpractice cases being filed in Pennsylvania courts."  Stroud v. Abington Mem. Hosp., 546 F. Supp. 2d 238, 247 (E.D. Pa. 2008) (citing Womer v. Hilliker, 908 A.2d 269, 275 (Pa. 2006)).  It is designed to set forth "an orderly procedure that would serve to identify and weed non-meritorious malpractice claims from the

---

6  DOC, Wexford and Correct Care Solutions appear to urge dismissal of the professional negligence claims against them under Rule 12(b)(6).  In fact, Rule 41(b), which permits dismissal for failure to prosecute, is the proper basis for dismissal when no certificate of merit is filed.  See Rohrbaugh v. York Cty. Prison, No. 05-136, 2005 WL 1458763, at *3 (M.D. Pa. June 20, 2005).

judicial system efficiently and promptly." <u>Bruno v. Erie Ins.</u>
<u>Co.</u>, 106 A.3d 48, 55 (Pa. 2014) (citations omitted).

      In relevant part, Rule 1042.3 provides:

    (a) In any action based upon an allegation
that a licensed professional deviated from
an acceptable professional standard, the
attorney for the plaintiff . . . shall file
with the complaint or within sixty days
after the filing of the complaint, a
certificate of merit signed by the attorney
or party that either

    (1) an appropriate licensed professional has
supplied a written statement that there
exists a reasonable probability that the
care, skill or knowledge exercised or
exhibited in the treatment, practice or work
that is the subject of the complaint, fell
outside acceptable professional standards
and that such conduct was a cause in
bringing about the harm, or

    (2) the claim that the defendant deviated
from an acceptable professional standard is
based solely on allegations that other
licensed professions for whom this defendant
is responsible deviated from an acceptable
professional standard, or

    (3) expert testimony of an appropriate
licensed professional is unnecessary for
prosecution of the claim.

    (b)(1) A separate certificate of merit shall
be filed as to each licensed professional
against whom a claim is asserted.

    (2) If a complainant raises claims under
both subdivisions (a)(1) and (a)(2) against
the same defendant, the attorney for the
plaintiff . . . shall file

    (i) a separate certificate of merit as to
each claim raised, or

> > (ii) a single certificate of merit stating
> > that claims are raised under both
> > subdivisions (a)(1) and (a)(2).

Rule 1042.3 is applicable to any

> > civil action in which a professional
> > liability claim is asserted by or on behalf
> > of a patient or client of the licensed
> > professional against (1) a licensed
> > professional, and/or (2) a partnership,
> > unincorporated association, corporation or
> > similar entity where the entity is
> > responsible for a licensed professional who
> > deviated from an acceptable professional
> > standard.

Pa. R. Civ. P. 1042.1(a).[7]

"Licensed professional," for the purposes of Rules
1042.1 and 1042.3, is defined to include "any person who is
licensed pursuant to an Act of Assembly as . . . a health care
provider . . . ; . . . a nurse; . . . [and] an optometrist."
Pa. R. Civ. P. 1042.1(c)(1)(i), (vii), (viii).  "Health care
provider" is, in turn, defined to include "a primary health care
center, a personal care home . . . , or a person, including a
corporation, university or other educational institution
licensed or approved by the Commonwealth to provide health care
or professional medical services as a physician, . . . a . . .
hospital, *and an officer, employee or agent of any of them*

---

7.  Cornish does not appear to dispute that this civil action
involves "a professional liability claim."

*acting in the course and scope of employment*."  40 Pa. Stat.
§ 1303.503 (emphasis added).

Our Court of Appeals has ruled that Rule 1042.3
constitutes substantive state law.  Liggon-Redding v. Estate of
Sugarman, 659 F.3d 258, 264-65 (3d Cir. 2011).  Accordingly,
that Rule governs any professional liability action in federal
court to which Pennsylvania law applies.  Id.

DOC contends that we must dismiss the vicarious
liability claims remaining against it in Count III pursuant to
Rule 41(b) of the Federal Rules of Civil Procedure.  According
to DOC, these claims cannot proceed because Cornish has not
timely filed a certificate of merit pertaining to DOC itself or
to the DOC employees whose actions serve as the basis for the
vicarious liability claim.  DOC emphasizes that Rule 1042.3
requires separate certificates of merit to be filed for "each
licensed professional against whom a claim is asserted."  It
adds that where a certificate of merit "sets out a vicarious
liability theory," separate certificates must also be filed "as
to each licensed professional for whom that defendant is alleged
to be vicariously liable."  See Stroud, 546 F. Supp. 2d at
248-49.

Having reviewed Rules 1042.1 and 1042.3, we conclude
that DOC does not constitute a "licensed professional" as
contemplated by those provisions.  Nor is the alleged respondeat

-12-

superior liability of DOC, as pleaded in the second amended complaint, based on the acts of any licensed professional.  It appears from the second amended complaint that the only named DOC employees whose actions serve as the basis for DOC's vicarious liability are Oppman and Korszniak.[8]  There is no indication that either of those two individuals is a "licensed professional" within the meaning of Rules 1042.1 and 1042.3.[9]  As a result, Cornish need not file certificates of merit as to DOC, Oppman, or Korszniak.

Wexford, Correct Care Solutions, and Machak also argue that the professional negligence claims against them must be dismissed since Cornish has not filed certificates of merit as to any of them.  We note that Cornish has filed certificates of

---

8.  As we have noted, Machak is named in the second amended complaint as a DOC employee but, according to representations made to the court, he was an employee of Correct Care Solutions at all relevant times.

9.  DOC urges that when a claim is based on the purported negligence of a prison healthcare administrator like Oppman or Korszniak, a certificate of merit is required.  However, the two cases it cites in support of this argument are inapposite.  In McCool v. Department of Corrections, the plaintiff filed a certificate of merit as to the Director of Prison Health Care Services at the prison where he was incarcerated, but the Commonwealth Court gave no indication that such a certificate was required.  984 A.2d 565, 571 (Pa. Commw. Ct. 2009).  Meanwhile, in Reaves v. Knauer, the Commonwealth Court assumed without any discussion that a certificate of merit was required as to a correctional health care administrator.  979 A.2d 404, 413-14 (Pa. Commw. Ct. 2009).  Neither decision, in our view, is persuasive here.

merit as to Boggio and Pandya, both of whom are alleged to have been employed by Wexford and Correct Care Solutions.

In Shon v. Karason, the Superior Court of Pennsylvania addressed whether a corporation that provides medical services is a "health care provider" and therefore a "licensed professional" for purposes of Rule 1042.3.  920 A.2d 1285 (Pa. Super. Ct. 2007).  There, the plaintiffs had failed to file a certificate of merit with respect to the incorporated podiatry center that employed the podiatrist who had allegedly provided deficient care.  Id. at 1286.  On appeal, the Superior Court rejected the plaintiffs' argument that no certificate of merit was required because the center was not a "licensed professional."  Id. at 1289.  It reasoned that even though the center was not itself  "licensed by the Commonwealth to provide health care or professional medical services," the "mere approval" it had received from the Commonwealth to conduct business within its borders was sufficient.  Id. at 1290.[10]

---

10.  This appears to have been in reference to the language of § 1303.503, which, as noted above, provides in relevant part that "a corporation . . . licensed *or approved* by the Commonwealth to provide health care or professional medical services as a physician, a certified nurse midwife, a podiatrist, hospital, nursing home, birth center, and an officer, employee or agent of any of them acting in the course of employment" is a "health care provider."  (Emphasis added.)

Wexford and Correct Care Solutions contend that under the reasoning set forth in Shon, they are "licensed professionals" because they have received the "approval" of the Commonwealth.  In response to the court's instruction during a January 7, 2016 status conference, Wexford and Correct Care Solutions have submitted affidavits describing their corporate licensure and purpose.

The affidavit submitted by Correct Care Solutions explains in relevant part that:  it is incorporated in Kansas but is registered to conduct business in the Commonwealth of Pennsylvania; its "primary business purpose is to provide medical and behavioral health services for patients located in state hospitals, forensic treatment, and civil commitment centers, as well as local, state, and federal correctional facilities"; since September 1, 2014 it has been under contract with DOC to provide medical services to DOC inmates; and at all relevant times it employed Machak, who maintains a physician assistant license issued by the Commonwealth.

The affidavit submitted by Wexford states in relevant part that:  it is incorporated in Florida and is registered to conduct business in the Commonwealth of Pennsylvania; it provides medical services that include onsite and offsite care, diagnostic services, vision and hearing services, and medical recordkeeping; and from January 1, 2013 until August 31, 2014,

-15-

it contracted to provide medical services to DOC inmates "through licensed individuals . . . including physicians, physician assistants, and certified registered nurse practitioners."

Significantly, like the podiatry center in Shon, Wexford and Correct Care Solutions are registered to conduct business in Pennsylvania and operate with the purpose of providing medical care. See Shon, 920 A.2d at 1290. This amounts to the "approval" of the Commonwealth and is sufficient to make Wexford and Correct Care Solutions "health care providers" within the meaning of § 1303.603. See id. They are therefore "licensed professionals" as defined by Rule 1042.1.

Cornish urges that even if Wexford and Correct Care Solutions are "licensed professionals," he need not file certificates of merit as to them because he was not their "patient or client." As noted above, Rule 1042.3 applies to civil actions "in which a professional liability claim is asserted by or on behalf of a patient or client of the licensed professional." Pa. R. Civ. P. 1042.1(a).

Cornish cites to the Pennsylvania Supreme Court's decision in Bruno, 106 A.3d 48, in support of his position that no certificate of merit is required. There, the plaintiffs had sued their homeowners' insurance company and a forensic engineer retained by that company after the engineer incorrectly informed

-16-

the plaintiffs that mold discovered inside the walls of their
new home was harmless.  Id. at 51.  Among the plaintiffs' claims
was a claim of professional negligence against the engineer.
Id. at 53.  Overturning the decision below, the Court concluded
that the plaintiffs were not his "patient or client" and thus
Rule 1042.3 did not require them to file a certificate of merit
as to the engineer, who had been retained by their insurance
company and not by them.  Id. at 74.  The Court reasoned that

> the plain language of Rule 1042.1 expressly
> cabins the application of the requirements
> of Rule 1042.3 for the filing of a
> certificate of merit to only those
> professional liability claims which are
> asserted against a licensed professional 'by
> or on behalf of a patient or client of the
> licensed professional.'  A certificate of
> merit is not, therefore, required for
> professional liability actions brought by
> plaintiffs who are not patients or clients
> of a licensed professional.

Id. (citation omitted).

Cornish was clearly a "patient" of Wexford and Correct
Care Solutions, both of which were in the business of providing
medical care to prisoners such as Cornish.  Further, they were
the employers of Boggio and Pandya, physicians who provided
medical care to Cornish, and Correct Care Solutions employed
Machak, a physician assistant who treated Cornish.  In sum,
Cornish must file certificates of merit as to Correct Care
Solutions and Wexford.

-17-

Cornish must also file a certificate of merit as to Machak if Cornish is to proceed with a professional liability claim against him or if Cornish's claims of vicarious liability against Machak's employers are based on Machak's actions or inactions.[11]  Machak is licensed as a physician assistant by the Commonwealth of Pennsylvania.  Moreover, Rule 1042.3 requires certificates of merit for all "licensed professionals," a category that includes "an officer, employee or agent of" a physician who acts "in the course and scope of employment."  Pa. R. Civ. P. 1042.1(c)(1)(i), 1042.3; 40 Pa. Stat. § 1303.503. Machak meets this description.

Anticipating that the court might disagree with his position that certificates of merit are not required, Cornish has moved for an extension of time to file any certificates of merit we deem necessary.  He asks to be permitted to file any such certificates of merit 20 days from the date of our decision here.  The court will permit him to file the necessary certificates of merit on or before February 8, 2016.

---

11.  Defendants point out that separate counts of professional negligence have been asserted against Boggio and Pandya but not against Machak.  They take this to mean that "negligence **has not** been asserted against" him.  However, Count III, Cornish's "negligence/corporate negligence" claim, "includes new non physician defendants," and also appears to plead vicarious liability against Machak's employer.

-18-

VII.

Boggio, Pandya, Machak, Wexford, and Correct Care Solutions seek dismissal of Count V insofar as it alleges monetary liability against them.[12]  Count V contains Cornish's state constitutional claim.  In connection with that claim, Cornish seeks damages as well as equitable relief in the form of a prohibition against defendants' continuation of their "illegal policy, practice, or custom" and an order requiring them "to promulgate an effective policy against such practices and to adhere thereto."[13]  The movants observe, and Cornish concedes, that we previously found monetary damages to be unavailable as a remedy for violations of the Pennsylvania Constitution.  <u>See</u> Memorandum and Order dated May 26, 2015 (Docs. ## 48, 49).  We will dismiss Count V as to the moving defendants insofar as that Count claims monetary damages.[14]

---

12.  It appears to be the argument of these defendants that Count V must be dismissed for failure to state a claim under Rule 12(b)(6).

13.  Although the movants ask us to dismiss Count V in its entirety, they limit their argument to Cornish's request for monetary damages without substantively addressing his claim for injunctive relief.

14.  As noted above, we are dismissing the state constitutional claims against DOC, Oppman, and Korszniak.

VIII.

Boggio, Pandya, Machak, Wexford, and Correct Care Solutions argue that all claims against them must be dismissed because Cornish has failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e, and the Pennsylvania Prison Litigation Reform Act, 42 Pa. Cons. Stat. Ann. § 6603(b).  They "incorporate by reference the well-pled arguments of the Pennsylvania Department of Corrections pertaining to Plaintiff's failure to exhaust his administrative remedies."  We have twice rejected these arguments.  See Memorandum and Order dated August 18, 2015 (Docs. ## 74, 75); Memorandum and Order dated May 26, 2015 (Docs. ## 48, 49); see also Jones v. Bock, 549 U.S. 199, 216 (2007).  We do so again here.

IX.

Finally, Oppman and Korszniak have moved to dismiss the crossclaim pleaded against them by Prison Health Services, Inc., Corizon, and McGrogan pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  Those crossclaimants allege generally that any wrongdoing found to have caused damage to Cornish is due to the liability of the other defendants.  We will grant their motion as unopposed.